# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

_____

SILVIJA WIDMER,

       **Plaintiff,**

v.                                   **Civ No. 94-672 JP/RLP**
                                           **Consolidated with:**
**STATE OF NEW MEXICO, ex rel.,**        **Civ. No. 96-1797 JP/RLP**
**NEW MEXICO STATE HIGHWAY AND**    **Civ. No. 97-1005 JP/RLP**
**TRANSPORTATION DEPARTMENT, et al.,**

       **Defendants.**

## MEMORANDUM OPINION AND ORDER

On August 14, 1998, defendants filed a "Motion for Summary Judgment" (Doc. No. 123) directed at Plaintiff's Amended Complaint in Civ. No. 96-1797 JP/RLP (Doc. No. 72) and Complaint in Civ. No. 97-1005 JP/RLP (Doc. No. 1 in Civ. No. 97-1005 JP/RLP).[1] The motion was argued at a pretrial conference on September 28, 1998. Plaintiff was represented by Joseph Sena, Esq., and Barbara Vigil, Esq. Defendants were represented by William Templeton, Esq., and Nancy DaCosta, Esq. After thoroughly considering the law, the facts, the arguments of counsel, and the evidence submitted to me after the pretrial conference, I conclude that defendants' Motion for Summary Judgment should be granted in part and is denied in part.

## I.    BACKGROUND

On December 23, 1996, plaintiff filed Civ. No. 96-1797 JP/RLP, a Title VII retaliation

---

[1] This lawsuit is a consolidation of three lawsuits filed by the plaintiff, Silvija Widmer. On January 7, 1997, Civ. No. 96-1797 was consolidated with Civ. No. 94-672. On August 26, 1997, Civ. No. 97-1005 was consolidated with Civ. No. 94-672. On September 18, 1998, I granted partial summary judgment for the remaining defendant, NMSTHD, which disposed of the remaining claims in Civ. No. 94-672.

lawsuit against NMSHTD, asserting claims under Title VII for unlawful retaliation for plaintiff's filing of a 1994 discrimination lawsuit, Civ. No. 94-672. Plaintiff amended her complaint in Civ. No. 96-1797 JP/RLP on April 11, 1997 ("First Retaliation Complaint").

On July 29, 1997, plaintiff filed a second retaliation lawsuit, Civ. No. 97-1005 JP/RLP, against three defendants: NMHTSD; Pete Rahn ("Rahn"), Secretary of NMHTSD, in his personal and official capacities; and William Curtis Woolf ("Woolf") in his personal and official capacities. This lawsuit ("Second Retaliation Complaint") contains eight counts: Violation of Title VII – Retaliation (Count I); Violation of First Amendment Rights (Count II); Conspiracy to Inhibit Redress in Violation of 42 U.S.C. § 1985 (Count III); Neglect to Prevent Obstruction of Justice in Violation of 42 U.S.C. § 1986 (Count IV); Violation of Due Process Rights (Count V); Violation of Right to Equal Protection (Count VI); Breach of Contract (Count VII); and Breach of Implied Covenant of Good Faith and Fair Dealings (Count VIII).

On August 14, 1998, defendants filed a motion for summary judgment directed at the claims in the First and Second Retaliation Complaints.

## II    ANALYSIS

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Applied Genetics Intern, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with

evidence showing that there is a genuine issue of material fact. *Bacchus Industries Inc. v. Arvin Industries Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. *Id*.

**A.     Title VII Retaliation Claims**

Title VII prohibits an employer from discriminating against an employee in retaliation for opposing unlawful employment practices. *See* 42 U.S.C. § 2000e-3(a). A plaintiff may bring a retaliation claim despite being unsuccessful in bringing an original charge of sex discrimination. *See Archuleta v. Colorado Dept. of Institutions*, 936 F.2d 483, 487 (10th Cir. 1991). Once plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action. *See Berry v. Stevinson Chevrolet,* 74 F.3d 980, 986 (10th Cir. 1996). If the defendant meets this burden, the plaintiff may demonstrate that the defendant's offered reasons are a mere pretext for discrimination. *Id*.

To establish a prima facie case of retaliation under Title VII, and to survive summary judgment, a plaintiff must present evidence establishing a genuine issue of fact that: (1) she engaged in protected opposition to discrimination; (2) adverse action by the employer against her subsequent to the protected activity; and (3) a causal connection between the protected activity and the adverse action. *See Archuleta,* 936 F.2d at 486; *Cole v. Ruidoso Mun. Schools*, 43 F.3d 1373, 1381 (10th Cir. 1994).

The Tenth Circuit has recently stated that "the law in this circuit liberally defines adverse employment action," and that the Tenth Circuit takes a case-by-case approach to determining whether a given employment action is "adverse." *Jeffries v. State of Kansas,* 147 F.3d 1220,

1232 (10th Cir. 1988).[2]  In *Jeffries*, when the plaintiff complained to Hospital administration about

sexual harassment, the plaintiff's supervisor told her he would not supervise her as a student, he

repeatedly threatened that her contract would not be renewed, and he refused to supervise her for

the duration of her employment.  *Id.*  The Tenth Circuit held that this raised a genuine factual

issue as to whether the plaintiff suffered an adverse employment action in retaliation for her

complaint. *Id.  See also Gunnell v. Utah Valley State College*, 1998 WL 488796 at *10 (10th Cir.

(Utah)) (rejecting the narrow interpretation of  "adverse employment action" advanced by the

Eighth, Fourth, and Fifth Circuits and holding that "co-worker hostility or retaliatory harassment,

if sufficiently severe, "may constitute 'adverse action'" under Title VII).[3]

   The Tenth Circuit distinguished the factual situation in *Jeffries* "from others in which we

held that unrealized threats or tense personal relationships do not rise to the level of actionable

retaliation."  *Jeffries* at 1232 (citing *Cole,* 43 F.3d at 1381 (no showing of adverse employment

action where no evidence that threat to evaluate teacher more often than peers was carried out));

*Fortner v. State of Kansas*, 934 F.Supp. 1252, 1268 (D.Kan.1996), *aff'd* 122 F.3d 40 (10th

Cir.1997) (no showing of adverse employment action where supervisors' manner toward plaintiff

---

[2] At the time I issued my opinion in *Caskey v. Commonwealth Broadcasting*, No. 96-Cv-1803, slip op. at 10-13 (D.N.M. April 1, 1998), neither this case nor *Gunnell v. Utah Valley State College*, 1998 WL (10th Cir. (Utah)), *infra* had been decided.  These cases provide some added guidance on the proper standard to apply in determining what constitutes "adverse actions" in the Tenth Circuit.

[3] Other examples of  "adverse action" include the filing of criminal charges against a former employee, *Berry v. Stevinson Chevrolet*, 74 F.3d 980 (10th Cir. 1996), failure to select an employee as a new director following the filing of a discrimination charge, *Purrington v. University of Utah*, 996 F.2d 1025 (10th Cir. 1993), and reassigning an employee when she complained of sexual harassment.  *See Sauers v. Salt Lake County*, 1 F.3d 1122, 1128 (10th Cir. 1993).

was attributable to predictable increase of tension in office following the filing of discrimination charges)). Thus, although "adverse employment action" is to be liberally construed, plaintiff must show that the action affected the terms or conditions of her employment. *Fortner*, 934 F.Supp. at 1266. This could mean actions affecting plaintiff's "authority, her standing, her rate of pay, her performance evaluations, her ability to perform, or her chances for promotion." *Id*. at 1267.

"[A] retaliatory motive can be inferred from the fact that an adverse employment action follows charges by an employee against his/her employer," but only when there is "close temporal proximity" between the bringing of the charges and the adverse actions. *See Candelaria v. E.G. & G Energy Measurements, Inc.,* 33 F.3d 1259, 1261-62 (10th Cir. 1994) (relying on Title VII case law to find that no inferences of retaliatory motive can be made when employee made charges against employer three years before employer's adverse action).

Here, defendants concede that plaintiff engaged in protected activity, which satisfies the first prong of the prima facie analysis. The plaintiff's First Retaliation Complaint alleges that NMSHTD retaliated against her because she filed a sex discrimination lawsuit in 1994. Specifically, plaintiff alleges that these acts constitute retaliation: the denial of promotion to a position classified as a Deputy Director; interference with and removal of budget functions and duties; denial of terms, conditions, privileges and compensation of employment; and "subjection to an unspoken, yet real, agreement to retaliate against her for filing her lawsuit against the Defendant."

Count I of plaintiff's Second Retaliation Complaint is similar to her First Retaliation Complaint, but it is directed at Woolf and Rahn as well as NMSHTD. Plaintiff's Response Brief

clarifies her position and sets forth nine specific acts that plaintiff alleges are adverse employment actions: (1) Defendants' Refusal to Promote Widmer for her Perceived Lack of Loyalty; (2) Removal of Budget Functions from Plaintiff's Assigned Job Duties; (3) Unfounded Reprimand for Inconsequential Conduct; (4) Prohibition Against Direct Communication with Administrative Division Director; (5) Salary Delay; (6) Encouragement of Others to Complain About and Against plaintiff; (7) Plaintiff chastised for Complaining about Retaliation; (8) Ultimate Removal of Budget Section from Plaintiff's Responsibility; and (9) Defendants' Downgrade and Elimination of a Viable Deputy Director 4 Position. At the hearing, however, plaintiff agreed that it would be inappropriate to instruct the jury that there are nine different acts of retaliation because not every individual act, standing alone, constitutes an adverse action.

Initially, I note that "[u]nder Title VII, suits against individuals must proceed in their official capacity; individual capacity suits are inappropriate." *Sauers*, 1 F. 3d at 1125. *See also Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir.1991) ("The relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act.") (emphasis in original); *Haynes v. Williams*, 1996 WL 391734 (10th Cir., July 12, 1996), 71 Fair. Empl. Prac. Cas. (BNA) 414, 68 Empl. Prac. Dec. P 4, 175 (confirming that *Sauers* is good law and stating, "personal capacity suits against individual supervisors are inappropriate under Title VII."). Consequently, I will grant defendants' motion for summary judgment on this issue and dismiss the claims against Rahn and Woolf in their individual capacities.

On the issue of the ultimate removal of the budget from plaintiff's responsibility, I will deny defendants' motion for summary judgment because the removal of the budget function, which was an important and significant part of plaintiff's job responsibilities, qualifies as an

adverse action under Title VII. *See Jeffries,* 147 F.3d at 1232. Plaintiff also showed a genuine issue of fact concerning a causal connection between this action and the protected activity.[4]

Several of the nine acts listed in plaintiff's brief, however, do not individually amount to adverse employment actions under Title VII. The temporary removal of budget functions from plaintiff's assigned job duties in May of 1995 does not constitute an adverse decision because the removal of the budget was rescinded almost immediately on May 25, 1995. *See* Ex. 6-b and Ex. 22, attached to Plaintiff's Response. Nor does the prohibition against direct communication with administrative division director Curtis Woolf constitute as an adverse employment action. Evidence of these acts, as described in Plaintiff's Response at points number two and four, are, however, admissible at trial for the purpose of proving plaintiff's claim that the ultimate removal of the budget function from her responsibility violated Title VII. Plaintiff's claim of being chastised for complaining about retaliation does not rise to the level of "adverse action" because the reprimand, warranted or not, did not result in any consequences for the plaintiff in terms of her compensation, terms, conditions or privileges of employment. *See Fortner*, 934 F.Supp. at 1267. I reserve ruling on the admissibility at trial of plaintiff's claim under point number seven that she was unduly chastised for complaining about retaliation; this evidence would only be admissible to support plaintiff's claim that the ultimate removal of the budget function from her responsibility violated Title VII, but at this point I am unable to balance its probative value on that issue against the danger of unfair prejudice and confusion.

---

[4] At the hearing, defendants' agreed that the filing of the 1996 and 1997 lawsuits are protected activities. There is close temporal proximity between the protected acts and the ultimate removal of the budget, which occurred in May, 1997. This supports an inference of retaliatory motive. *See Candelaria,* 33 F.3d at 1262.

At point number five in plaintiff's response, she argues that a two month delay in her annual bonus was an adverse action caused by Woolf's refusal to accept a rating of plaintiff of "excellent." This does not meet the standard for an adverse action because she was reimbursed and the delay did not affect any condition of plaintiff's employment. Bill Moffat's affidavit states that he was responsible for the delay and that once he learned of it he apologized in writing and promptly paid plaintiff. Moffat Aff., ¶ 3. Consequently, I will grant defendant's motion for summary judgment on this issue, raised as point number five in plaintiff's response, and hold that this evidence is inadmissible under Fed. R. Evid. 403.

As for plaintiff's allegation in point number three, that she received an unfounded reprimand for inconsequential conduct, I will grant defendants' motion for summary judgment because this does not amount to an adverse action and is not closely enough related to the ultimate removal of responsibility for the budget to have any significant probative value. Even if this evidence were relevant, I would exclude it under Fed. R. Evid. 403 because its minor probative value is outweighed by danger of unfair prejudice or jury confusion.

I also will grant defendants' motion for summary judgment on plaintiff's issue number six, encouragement of others to complain about and against plaintiff. Plaintiff contends that "[t]hrough Bill Moffatt, Woolf encouraged" Martinez to file a "grievance against Widmer in an effort to discredit her . . . ." The evidence does not support this allegation. Plaintiff cites to Martinez' deposition, but this merely reveals that Mr. Moffat informed Mr. Martinez of his rights to file a grievance. Martinez Depo, p. 113-114. Martinez stated in the deposition that he informed Moffat that he did not want to file a grievance, and Moffatt dropped the matter. *Id.* There is no direct indication that Moffat, or Woolf, encouraged Martinez to file a grievance

against plaintiff. Even if there were, the mere encouragement of the filing of a grievance, which never culminated in Mr. Martinez' actually filing a grievance against the plaintiff, is simply not enough to constitute an adverse action. *See Cole*, 43 F.3d at 1381 (a mere threat to evaluate teacher more often than peers with similar teaching experience does not rise to the level of adverse action); *compare Berry*, 74 F.3d 980 (the filing of criminal charges against a former employee constitutes adverse action under Title VII). I will reserve ruling on the admissibility of this evidence at trial as proof of the retaliatory nature of the ultimate removal of the budget function.

I will also grant defendants' motion for summary judgment on the plaintiff's ninth issue, defendants' failure to promote her to a Deputy Director 4 position in July, 1997. Defendants' claim plaintiff asked to be promoted without following the standard selection process. Plaintiff's deposition testimony concedes this, Widmer Depo., pp. 515-518, and plaintiff's counsel also conceded this at the hearing. Thus, there really was no adverse action. Defendant's refusal to directly promote the plaintiff into the position in violation of the standard selection process cannot reasonably be considered adverse. I will reserve ruling on the admissibility of this evidence at trial as proof of the retaliatory nature of the ultimate removal of the budget function.

I will deny defendants motion for summary judgment on plaintiff's first issue, refusal to promote the plaintiff for her perceived lack of loyalty. I find that there are genuine issues of material fact concerning plaintiff's claim that defendants' refusal to promote plaintiff to a Deputy Director 4 position in April, 1995, was based on defendants' consideration of plaintiff's "loyalty." Although plaintiff's interviewers claim to have known little or nothing about plaintiff's 1994

discrimination lawsuit,[5] plaintiff states that when she asked Mr. Roybal what criteria he was seeking in candidates, he smirked and said, "loyalty." Widmer Depo., p. 85. I must review the facts in the light most favorable to the plaintiff. *See Cole*, 43 F.3d 1377 (When reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party).

With Mr. Roybal's concession that knew something about plaintiff's lawsuit and Ms. Widmer's deposition statement about his comment during the interview, plaintiff has raised a genuine issue of fact concerning whether Mr. Roybal said that loyalty was an important factor in the selection criteria and, based on the defendants' equal employment opportunity policy statement, attached to Plaintiff's Response at Ex. 82, whether he considered it as a factor. If he did consider loyalty as a factor, and then failed to promote plaintiff because of it, this would constitute an adverse employment action. *See Fortner* at 1267 (actions affecting an employee's chance of promotion can constitute adverse employment actions).

Defendants argue that there is no casual connection between the protected activity, the filing of the 1994 lawsuit, and the adverse action of declining to promote because ten months passed between the two incidents and because neither Mr. Sandoval nor Mr. Roybal were targets of the 1994 lawsuit. Defendants' Memorandum at 9-10. I conclude, however, that ten months meets the temporal proximity requirement to establish a casual connection. *Compare Cole*, 33 F.3d at 1262 (no inference of retaliatory motive can be inferred when employer's adverse action

---

[5] Mr. Roybal states that at the time of the interview he had only heard rumors of plaintiff's lawsuit but did not ever know the specifics of it. Roybal Aff. ¶ 4. Mr. Sandoval, who was also involved in the interviewing process, states he was unaware of plaintiff's filing a complaint against NMHTSD until 1997. Sandoval Depo., ¶ 2. The jurors, as fact finders, must assess the credibility of plaintiff, Mr. Roybal, and Mr. Sandoval on these points.

occurred three years after employee filed discrimination charges).  I reject defendants' argument that Mr. Sandoval and Mr. Roybal could not have retaliated against the plaintiff because they were not targets of the 1994 lawsuit against NMSTHD.  Both Mr. Sandoval and Mr. Roybal have been employees of  NMSTHD for more than 26 years, Sandoval Aff. ¶ 1 and Roybal Aff. ¶ 1.  It is not inconceivable that such long-term employees of a department, sued by another employee for sexual discrimination, could retaliate against the suing employee. Thus, there is a genuine issue of material fact as to the existence of a causal connection between the filing of the 1994 discrimination lawsuit against the NMSTHD and the allegedly adverse action by Mr. Sandoval and Mr. Roybal.

**B.**     **First Amendment Claims**

The Supreme Court adopted a multi-tier test to determine whether a public employer's actions impermissibly infringe on free speech rights: (1) the court must decide whether the issue touches on a matter of public concern; (2) if so, the court balances the interest of the employee in making the statement against the employer's interest in promoting efficiency of the public services it performs through its employees; (3) if the first two prongs are satisfied, then the speech is protected and plaintiff must show her expression was a motivating factor in the detrimental employment decision; and (4) if plaintiff meets this burden, the employer can prevail if it shows by a preponderance of the evidence that it would have made the same decision regardless of the protected speech. *Schalk v. Gallemore*, 906 F.2d 491, 494-95 (10th Cir. 1990) (internal citations omitted).

Here, plaintiff's speech is not protected because it was made in the context of an ongoing personal employment grievance and because plaintiff's comments were all directed at her

supervisors and co-workers, whether in the form of a lawsuit or a memo. *Id*. Therefore, I will grant defendants' motion for summary judgment on Count II of Plaintiff's Second Retaliation Complaint.

**C.      Conspiracy Claims under 42 U.S.C. § 1985 and § 1986**

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const.Amend. 11. Generally, the Eleventh Amendment is a complete bar to lawsuits brought in federal court by individuals against a state or state agency. *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974). An individual may, however, bring suit if the state unequivocally has waived its immunity or if congressional legislation under Section 5 of the Fourteenth Amendment operates as a waiver of the Eleventh Amendment's protection. *See Wright v. Butts*, 953 F.Supp. 1352, 1358 (M.D. Ala. 1996).

There is no evidence that the state of New Mexico waived its immunity under § 1985 or that Congress waived the states' Eleventh Amendment immunity. Therefore, NMSHTD is immune from suit. *Id*. (granting defendants' motion for summary judgment on plaintiff's §§ 1981, 1983, and 1985 claims against the State of Alabama Department of Transportation because it was an arm of the state protected by Eleventh Amendment immunity); *Fincher v. State of Fla. Dept. of Labor*, 798 F.2d 1371, 1372 (11th Cir. 1986) (affirming district court's dismissal of plaintiff's § 1985 claim against the Florida Unemployment Appeals Commission on the grounds of Eleventh Amendment immunity).

The Eleventh Amendment also prohibits § 1985 actions seeking compensatory and

punitive damages against defendants sued in their official capacities. *Wright*, 953 F.Supp. at 1358 (granting summary judgment for state defendants sued in their official capacities on plaintiff's § 1981, 1983, and 1985 claims). Therefore, I will grant defendants' motion for summary judgment without prejudice with respect to plaintiff's § 1985 and § 1986 claims against defendants Rahn and Woolf in their official capacities.

At the hearing, the plaintiff's counsel requested that the claims against Woolf and Rahn in their individual capacities be dismissed without prejudice to allow the claims to stay together. Therefore, I will also grant defendants' motion for summary judgment without prejudice with respect to plaintiff's § 1985 and § 1986 claims against defendants Rahn and Woolf in their individual capacities.

**D.      Due Process Claims**

In Count V of Plaintiff's Second Amended Complaint, plaintiff alleges that defendants' violated both her substantive and procedural due process rights.

### 1.      Substantive Due Process

Judge Black recently followed the Sixth, Seventh, and Eleventh Circuits in holding that in non-legislative cases, only procedural due process claims are available to plaintiffs claiming pretextual employment termination. *See Roe v. Antle*, 964 F.Supp. 1522, 1533 (D.N.M. 1997). An executive act usually applies to a limited number of people, and often just a single person, while legislative acts normally apply to a vastly larger number of people. *See id*. at 1532.

In this case, it is clear that the acts plaintiff complains of are executive in nature because they affected only her. Relying on Judge Black's reasoning in *Antle*, I will grant defendants' motion for summary judgment on plaintiff's substantive due process claims.

## 2.    **Procedural Due Process**

The Fourteenth Amendment safeguards interests that a person has acquired in recognized property rights. *See Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 576-77 (1972). Whether a public employee has an interest in continued public employment, and a property right entitling her to procedural due process, is defined by sources independent from the Constitution, such as state law. *See Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 536 (10th Cir. 1995).

Plaintiff's Second Retaliation Complaint alleges that her employment with the defendants was "pursuant to a contract, express or implied by the terms of the State Personnel Board rules (hereinafter 'policy')." Complaint, ¶ 83. Plaintiff alleges that "[t]he contract created by the policy establishes property rights under the laws" of New Mexico. Complaint, ¶ 85. Defendants allegedly violated plaintiff's due process rights by failing to allow her to be heard concerning alleged abusive conduct and for failing to address the retaliation she was experiencing. Complaint, ¶ 89. Plaintiff contends that "the Defendants' failure to have a policy and process in place to address [retaliation] problems in the workplace constitutes a denial of due process under law." Complaint, ¶ 91. Plaintiff also alleges that she "had a property right to be free from retaliation in the workplace," and that her continued subjection to retaliation without "a meaningful opportunity to be heard before a neutral judge or hearing officer" violated her due process rights. Complaint, ¶ 92, 93. Plaintiff's response brief argues that plaintiff has a protected property interest in her job as described officially in the Department's Organization Statement Title: Administrative Division Finance Bureau and that she cannot be deprived of any of these described job duties without a due process hearing.

Plaintiff's due process claims can only succeed if she shows that defendants' deprived her

of *a protected property interest*, without due process of law. *See Roth*, 408 U.S. 564. Plaintiff

seems to assert that she had a protected property right to be free from retaliation in the

workplace, Complaint, ¶ 92, and to perform all of the job duties described in the Department's

Organization Statement Title: Administrative Division Finance Bureau. New Mexico state law

determines whether there is a protected property interest for purposes of plaintiff's procedural

due process claim. *See Paul v. Davis*, 424 U.S. 693, 710 (1975); *see also Anglemeyer v.*

*Hamilton County Hosp.*, 58 F.3d 533, 538 (10th Cir. 1996) (turning to state law to determine

whether plaintiff had a protected property interest).

In New Mexico, "a constitutionally protected property interest can arise despite the

absence of a statute or formal contract." *Lovato v. City of Albuquerque*, 106 N.M. 287, 290

(1987). In *Lovato*, the New Mexico supreme court held that a City employee's continued

employment in the same position is a constitutionally protected property interest and that

defendants' violated due process by failing to provide the plaintiff with a hearing before

reassigning him to a job that paid 5% less than his previous position.

This case clearly is distinguishable from *Lovato*. In *Lovato*, the plaintiff was reassigned

and received a pay reduction. Here, however, plaintiff has not been reassigned and her pay has

not been reduced. Plaintiff has cited no New Mexico cases, and I have found none, that support

her assertion that due process considerations require a hearing before a public employee's job

duties are reassigned or that she has a protected property interest in being free from retaliation.[6]

---

[6] Plaintiff cites *West v. Grand County*, 967 F.2d 362 (10th Cir. 1992) and *Forsythe v. City of Dallas Tex.*, 91 F.3d 769 (5th Cir. 1996), *cert denied*, -- U.S. --, 118 S.Ct. 64 (1997). *West* is distinguishable because it involved a plaintiff who was terminated. In *Forsythe*, the plaintiffs were transferred from the Intelligence Unit to night uniformed patrol, but received no reduction in pay. *Forsythe* is distinguishable because the plaintiffs were actually transferred from one job to a much

When there is no state law on an issue, I may turn to other state and federal decisions. *Anglemyer*, 58 F.3d at 539.

This case is similar to *Anglemyer*. In that case, a hospital board removed the plaintiff's quality assurance and risk management duties, but she was not terminated from her position as staff nurse. *Id*. at 535. The district court granted defendants' motion for summary judgment on plaintiff's due process claim. *Id*. at 537. Although the Tenth Circuit found that the district court's reasoning was in error, *id*. at 539, the Tenth Circuit determined that defendants' motion for summary judgment was properly granted for another reason.

The Tenth Circuit examined the question of whether the plaintiff "had a property interest amenable to procedural due process protection in her continued employment in a particular position under [state] law." *Id*. at 538. The court held that "Ms. Anglemyer does not have a protected property interest in her quality assurance and risk management job assignments at the hospital." *Id*. at 540. The court also noted that plaintiff failed to produce evidence that she would have suffered a salary decrease.

*Lovato* does not support plaintiff's position, and, under *Anglemyer*, it is clear that plaintiff has no protected property right in retaining all of the various job duties described in the Organization Statement. Nor does plaintiff have a protected property right in remaining free from retaliation. *See Volk v. Coler*, 845 F.2d 1422, 1430 (7th Cir. 1988) (denying plaintiff's due process claims and stating that plaintiff's constitutionally protected right to be free from retaliation is cognizable under the first amendment, § 1983 and 1985(3) and Title VII, but not under the due process clause).

_____

less desirable one.

Therefore, I will grant defendants' motion for summary judgment on plaintiff's procedural due process claims.

**E.      Equal Protection Claim**

"[A] right created solely under Title VII cannot serve as the basis for an independent remedy under Section 1983, lest Congress' prescribed remedies under Title VII be undermined." *Starrett v. Wadley*, 876 F.2d 808, 813 (10th Cir. 1989)  (citing *Long v. Laramie County Community College Dist.*, 840 F.2d 743, 752 (10th Cir.) (right to be free from retaliation for filing a discrimination charge, created by Title VII, cannot be sole basis of  Section 1983 action), *cert. denied*, 488 U.S. 825 (1988)).  If a  plaintiff's Section 1983 claim, however, is not predicated upon a violation of Title VII, but rather upon a violation of the Fourteenth Amendment, and a plaintiff can show a constitutional violation by someone acting under color of state law, then the plaintiff has a cause of action under Section 1983.  *Starrett*, 876 F.2d at 814.

Count VI of Plaintiff's Second Retaliation Complaint asserts that the defendants' conduct denied Plaintiff her rights to equal protection.

> The Defendants' conduct is the 'policy' or 'custom' of the
> [NMSTHD] which impact is to prevent the fair administration of
> state government in said department upon female employees.  The
> Defendants' conduct of retaliation in the workplace and ultimately
> causing a denial of legitimate job benefits to the Plaintiff after her
> complaints constitutes discrimination against women.  This
> discrimination was a motivating factor in their conduct.  The
> Plaintiff was injured by such policy or custom.

Plaintiff's Second Retaliation Complaint, ¶ 103.   Because the plaintiff in this case has alleged constitutional violations under the equal protection clause, she has alleged an independent basis for her claim apart from Title VII, and I must determine whether the factual allegations support

her equal protection claim. *See Drake v. City of Fort Collins*, 927 F.2d 1156, 1162 (10th Cir. 1991) (Title VII is not exclusive federal remedy for discrimination and the court will examine plaintiff's factual allegations to determine whether plaintiff's due process and equal protection rights were violated).

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.  It is triggered when an individual is treated differently than another similarly situated individual. *Garcia v. State of New Mexico Officer of Treasurer*, 959 F.Supp. 1426, 1432 (D.N.M. 1997).  The plaintiff must show that discriminatory intent is a motivating factor in the alleged discriminatory treatment. *See Villanueva v. Carere*, 85 F.3d 481, 485 (10th Cir. 1996).

In plaintiff's response, plaintiff claims that she has shown in detail "evidence to establish that the Department and her supervisors treated her differently from others similarly situated," but fails to cite any evidence to support this assertion. *See* Plaintiff's Response at 20.  Plaintiff does refer to Martinez' promotion to head of the Quality Bureau and his selection to serve in the role of Acting Deputy Administrative Services Director with responsibilities in oversight of plaintiff as evidence of disparate treatment. *Id*.  At the hearing, plaintiff's counsel reiterated that her equal protection claim is based on defendants' alleged gender discrimination against the plaintiff. Plaintiff's counsel stated that the equal protection claim was based on the defendants' disparate treatment of men and women when they made complaints, and defendants' promotion of Mr. Randy Baca to the position of Deputy 4 Director in the Field Operations Division.

Plaintiff has presented no admissible evidence of a "policy or custom" of NMHSTD to discriminate against women.  As for Martinez' promotion to serve as head of the Quality Bureau,

defendants' assert that plaintiff never applied for this position. Defendant's reply, n. 10 at 10. Plaintiff did not dispute this at the hearing. Therefore, plaintiff could not be similarly situated to Mr. Martinez with regard to his promotion as head of the Quality Bureau. There is no evidence of how the Acting Deputy Administrative Services Director is selected, what the qualifications for such a position are, or who applied for this position. Nor has plaintiff presented evidence of the defendants' discriminatory intent or purpose or that this discriminatory intent was a motivating factor in defendants' decision to select Mr. Martinez as Acting Deputy Administrative Services Director.

With respect to plaintiff's claim that the defendants violated her equal protection rights and discriminated against her on the basis of gender by promoting Mr. Baca to the Deputy 4 Director position, plaintiff failed to produce any evidence that this decision was motivated by defendants' intent to discriminate against the plaintiff on the basis of her gender. As discussed in section II. A of this memorandum opinion and order, plaintiff has presented evidence that this decision was in *retaliation* for plaintiff's filing her 1994 discrimination lawsuit but has not presented evidence that this decision was motivated by defendants' discriminatory intent based on plaintiff's *gender*.

With respect to plaintiff's claim that men were treated differently than women when they made complaints,[7] there is no evidence, again, of defendants' discriminatory intent based on plaintiff's gender or that this intent was the motivating factor in failing to respond to plaintiff's

---

[7] Plaintiff refers to the selection of Mr. Baca for the position of Field Operations Director. After this selection, a male applicant filed a formal complaint that Mr. Rahn investigated. *See* Rahn Affidavit ¶ 4. Ms. Widmer made an informal complaint by writing a memo to Mr. Rahn, *see* Exhibit 4 attached to Plaintiff's Response. Mr. Rahn claims no memory of receiving Ms. Widmer's informal complaint in the form of a memo. *See* Rahn Affidavit ¶ 5.

complaint. The fact that Mr. Rahn investigated and responded to a formal complaint by an unsuccessful male applicant, but failed to investigate or respond to Ms. Widmer's informal memo complaint, does not, by itself, support plaintiff's claim of gender discrimination. Nor is it clear how plaintiff was injured by the failure to investigate her complaint; when Mr. Rahn did conduct an investigation into the selection process based on the male applicant's complaint, he determined that the process was objective and that "the person ultimately selected was a top candidate for the job." Rahn Aff. ¶ 5.

Because plaintiff failed to present admissible evidence that defendants discriminated against her on the basis of gender in violation of the Equal Protection clause, I will grant defendants' motion for summary judgment on Count VI of plaintiff's complaint.

**F.    State Law Claims**

At the hearing, plaintiff's counsel agreed that plaintiff's state law claims for breach of contract (Count VII) and breach of the implied covenant of good faith and fair dealings (Count VII) are barred by the Eleventh Amendment. Therefore, I grant defendants' motion for summary judgment on plaintiff's state law claims and dismiss these claims without prejudice.

**G.    Punitive Damages**

Punitive damages are not recoverable against a government agency for Title VII violations. 42 U.S.C. § 1981a(b)(1). Thus, plaintiff may not recover punitive damages against NMSHTD. Because defendants Woolf and Rahn remain in this lawsuit only in their official capacities, plaintiff may not recover punitive damages against them. Plaintiff's claim for punitive damages will be dismissed.

**H.    Mitigation of Damages**

I will deny defendants' motion for summary judgment based on the argument that as a matter of law plaintiff failed to mitigate her damages when she rejected an offer from the Arizona Department of Transportation. *See Coleman v. City of Omaha*, 714 F.2d 804, 808 (8th Cir. 1983) (Plaintiff could not be required to move from his home town in order to mitigate damages caused by the defendant's unlawful discrimination, although evidence of positions available in plaintiff's home town warranted presentation to the jury); *Fauser v. Memphis Housing Authority*, 780 F.Supp. 1168, 1177 (W.D. Tenn. 1991) (denying defendants' motion for summary judgment on the issue of mitigation of damages when the plaintiff was offered a position in a different geographic location where the cost of living was higher and the plaintiff would be making $10, 643.64 less than her previous job).

IT IS THEREFORE ORDERED that:

(1)     Defendants' motion for summary judgment on Count I of Plaintiff's First Retaliation Complaint (Doc. No. 72 in Civ. No.  96-1797 JP/RLP) and Second Retaliation Complaint (Doc. No. 1 in Civ. No. 97-1005) is DENIED in part and GRANTED in part, as consistent with this opinion, and the claims against Rahn and Woolf  in their individual capacities are dismissed;

(2)     Defendants' motion for summary judgment on the First Amendment Claims, Count II of Plaintiff's Second Retaliation Complaint, is GRANTED;

(3)     Defendants' motion for summary judgment on Count III and IV of Plaintiff's Second Retaliation Complaint, alleging violations of 42 U.S.C. §§ 1985 and 1986 is GRANTED without prejudice;

(4)      Defendants' motion for summary judgment on Count V of Plaintiff's Second Retaliation Complaint, the due process claims, is GRANTED;

(5)      Defendants' motion for summary judgment on Count VI of Plaintiff's Second Retaliation Complaint, the equal protection claim, is GRANTED;

(6)      Defendants' motion for summary judgment on Counts VII and VIII of Plaintiff's Second Retaliation complaint, the state law claims, is GRANTED;

(7)      Defendants' motion for summary judgment as to plaintiff's claims for punitive damages is GRANTED; and

(8)      Defendants' motion for summary judgment as to mitigation of damages is DENIED.

UNITED STATES DISTRICT JUDGE